UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER DALE ROBERTS,

        Petitioner,

v.                          CASE NO. 2:12-cv-14673
                                 HONORABLE SEAN F. COX

PAUL KLEE,

        Respondent.

_____/

**OPINION AND ORDER DENYING THE AMENDED PETITION
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

This matter has come before the Court on petitioner Roger Dale Roberts'
amended habeas corpus petition and supporting brief under 28 U.S.C. § 2254. The
petition challenges Petitioner's Michigan convictions for three counts of child
sexually abusive activity, Mich. Comp. Laws § 750.145c(2). Petitioner alleges that
(1) his conduct did not constitute a crime because he lacked criminal intent, (2) his
former attorney was constitutionally ineffective for not raising his first claim at trial
and on appeal, and (3) the statute of conviction is impermissibly vague. *See* Am.
Pet. (ECF No.16-1, PageID142-145). The State opposes the amended petition on
grounds that Petitioner's claims are procedurally defaulted or meritless. *See* Answer
in Opp'n to Pet. (ECF No. 20, PageID.207-208). Having reviewed the pleadings
and record, the Court concludes that Petitioner's claims are not procedurally

defaulted, but that they do lack merit.  Accordingly, the amended petition will be denied, and the case will be dismissed.

## I.  Background

### A.  The Charges and Interlocutory Appeal

The charges against Petitioner arose from Petitioner's "exploitation of a seventeen-year-old female victim who had . . . aspirations of being a model and earning money.  [Petitioner] exploited the victim's desires by convincing or coercing her to perform a variety of sexual acts, and he filmed these sexual acts on his cell phone." *People v. Roberts*, Op. and Order at p. 2, No. 08-57305-FH (Muskegon Cty. Cir. Ct. June 7, 2016); ECF No. 22-1, PageID.2647-2654.

The incident was reported to the police as a rape, but Petitioner was not arrested immediately or charged with criminal sexual conduct.  The prosecutor ultimately charged Petitioner with child sexually abusive activity.

Petitioner moved to dismiss the charge before trial on the basis that the statute which he was accused of violating was vague and overbroad.  The trial court held a hearing and denied the motion after concluding that the statute was specific and that it "satisfie[d] constitutional muster."  4/21/09 Mot. Hr'g Tr. at p.28 (ECF No. 21-3, PageID.411).  Petitioner challenged the trial court's decision in an interlocutory appeal.  The Michigan Court of Appeals, however, denied Petitioner's application because the court was not persuaded of the need for immediate appellate review.  *See*

*People v. Roberts*, No. 291751 (Mich. Ct. App. May 20, 2009); ECF No. 21-17,

PageID.1991. Petitioner did not appeal that order to the Michigan Supreme Court.

*See* 2/1/19 Affidavit of Larry Royster (ECF No. 21-24).

## B. The Trial and Sentence

Petitioner subsequently was tried before a jury in Muskegon County Circuit

Court. The Michigan Court of Appeals summarized the facts as follows:

> Defendant advertised in a newspaper for models. The 17–year–old victim responded to the advertisement, and she and her father met with defendant at his gymnasium. Defendant requested that the victim's parents sign a release stating, "I understand my daughter is under ... 18 years of age and that my daughter will [be] performing nudity in [an] R- and X-rated capacity." The release, which the parents signed, also provided, "I also understand that [my daughter] has full permission to make her own decisions and will have our full support." However, defendant advised the victim's parents that no X-rated photographs would be taken of her until she was 18 years old and that any photographs taken beforehand could not be distributed. The victim was "anxious to start the process as quick as possible" so that she could start making money.

> Defendant prohibited the victim's parents from attending the photography session scheduled for the day after they signed the release. Rather than photographing her at the gymnasium or the beach, as was the victim's initial understanding, defendant drove her to see his remodeled studio and then took her to his nearby home.

> At defendant's home, defendant showed the victim a pornographic magazine and indicated to her that, when nude photographs are taken, "you have to have this kind of attitude." Defendant offered the victim alcohol, but she declined. Defendant subsequently began taking photographs of her—first clothed and then unclothed. The victim testified that she allowed the unclothed pictures because defendant told her that she could earn approximately $18,000 by the time she was 18 years old.

Later in the photography session, defendant "pulled down his pants," "pulled out his penis," and "forced it" into her mouth. Defendant said "this will help you relax and get over your nervousness." Without informing the victim, defendant recorded this sexual act using the video feature on his cellular telephone. The victim testified that she did not want to perform this act, but she did it because she "was scared" and thought it was going to help her modeling career.

The victim testified, "Then he takes the rest of his clothes off and put me on top of him and he makes me do 69." Next, the victim testified that defendant "wanted to do doggy style." Again, without informing the victim, defendant recorded these acts using the video feature on his cellular telephone. Defendant took additional photographs afterward, and the victim explained that she did not run away because she was scared of defendant, who had told her "he was a black belt," and she was afraid he would not give her a ride home. Although defendant warned the victim not to tell her family what happened, the victim told her mother, who called the police.

*People v. Roberts*, 292 Mich. App. 492, 494-96; 808 N.W.2d 290, 294–95 (2011). This summary of the facts is supported by the record, and Petitioner accepts it as accurate. *See* Petitioner's Response to Respondent's Opp'n to Pet. for Habeas Corpus (ECF No. 22, PageID.2620).

The witnesses at trial consisted of the complainant and the two police officers who interviewed Petitioner in his home on the evening of the alleged crime. The officers testified that they informed Petitioner during the interview that they were investigating the complainant's charge of rape. Petitioner initially denied knowing the complainant, but after his adolescent son was sent to bed, Petitioner

4

acknowledged knowing the complainant, and he showed the officers the photographs and video that he had taken of the complainant and himself.

Petitioner waived his right to testify, and he did not present any witnesses in his defense.   His defense was that the complainant was not credible, that the prosecution had not proved its case, and that, at most, he was guilty of the lesser charge of possession of child sexually abusive material.  On July 17, 2009, the jury found Petitioner guilty, as charged, of three counts of arranging for and/or producing and/or making and/or financing child sexually abusive activity and/or child sexually abusive material.  *See* 7/17/09 Trial Tr. at pp. 61-63 (ECF No. 21-10, PageID.1389-1391).   On August 14, 2009, the trial court sentenced Petitioner as a habitual offender to three concurrent terms of seven to twenty-two years in prison with credit for one day.  *See* 8/14/09 Sentence Hr'g Tr. at p. 29 (ECF No. 21-11, PageID.1426).

## C.  The Direct Appeal

Petitioner appealed his convictions as of right through the same attorney that represented him at trial.  He argued that: (1) the trial court erred when the court denied his motion to dismiss, which argued that Mich. Comp. Laws § 750.145c was unconstitutionally vague; (2) the same statute was overbroad and, therefore, it violated substantive due process; (3) the trial court erred when it denied his motion to suppress certain evidence; and (4) the trial court abused its discretion when it declined to depart downward from the sentencing guidelines.  The Michigan Court

of Appeals rejected these arguments and affirmed Petitioner's convictions in a published decision. *See Roberts*, 292 Mich. App. at 494; 808 N.W.2d at 294.

Petitioner raised the first three claims that he presented to the Court of Appeals in an application for leave to the Michigan Supreme Court. On October 24, 2011, the state supreme court denied leave to appeal because it was not persuaded to review Petitioner's claims. *See People v. Roberts,* 490 Mich. 893; 804 N.W.2d 325 (2011).

## D. The Initial Petition

In October of 2012, Petitioner filed his initial habeas corpus petition. *See* Pet., ECF No. 1. He alleged that (1) his trial attorney was ineffective, (2) the prosecution's case was based on perjured testimony, and (3) he did not commit the crime for which he was charged, and there was insufficient evidence to support the charge against him. *See id*. at PageID.4-7. The judge previously assigned to this case held the petition in abeyance so that Petitioner could pursue state remedies for his unexhausted claims before seeking habeas corpus relief. *See* Order Holding Pet. in Abeyance (ECF No. 7).

## E. The First Motion for Relief from Judgment and Subsequent Appeal

In 2014, Petitioner filed a lengthy motion for relief from judgment under Subchapter 6.500 of the Michigan Court Rules. *See* Application and Mot. for Relief from J. (ECF No. 21-12). He also filed several other motions, including a motion to disqualify the trial judge and a motion to file a brief containing more than twenty

pages.  In his motion for relief from judgment, Petitioner alleged, among other things, that: (1) his trial attorney was ineffective for failing to investigate the elements of the crime, particularly the *mens rea* element, and for failing to require the prosecutor to prove the elements of the crime, *see id.* at PageID.1436 ¶ 5.E; the evidence was legally insufficient because the elements of the offense, including the required *mens rea* of the offense, were never established, and because his conduct fell outside the confines of child sexually abusive activity, *see id*. at PageID.1444-1445, 1618-1619; ineffective assistance of counsel contributed to the errors, *see id*. at PageID.1445; and appellate counsel was ineffective for failing to determine the elements of the crime and raise the affirmative defense of insufficient evidence, *see id*. at PageID.1619.

The trial court denied Petitioner's motion for judicial disqualification and granted in part Petitioner's motion for leave to file a brief more than twenty pages. The court returned Petitioner's lengthy brief for post-appeal relief to Petitioner without considering it to better preserve Petitioner's remaining remedies.  *See* Op. and Order, No. 08-57305-FH (Muskegon Cty. Cir. Ct. Apr. 16, 2014); ECF No. 21-21, PageID.2412-2414.

Petitioner appealed the trial court's order, but the Michigan Court of Appeals denied his application for leave to appeal due to "lack of merit in the grounds presented" to the court. *See People v. Roberts*, No. 322732 (Mich. Ct. App. Nov. 7,

2014).  Petitioner appealed the Court of Appeals decision to the Michigan Supreme Court, which denied leave to appeal on September 29, 2015, because the court was not persuaded to review the questions presented to it.  *See People v. Roberts,* 498 Mich. 883; 869 N.W.2d 564 (2015).  Petitioner moved for reconsideration, but on February 2, 2016, the Michigan Supreme Court denied reconsideration because it did not appear to the court that its previous order was entered erroneously.  *See People v. Roberts*, 499 Mich. 859; 873 N.W.2d 555 (2016).

## F.  The Second Motion for Relief from Judgment

In 2016, Petitioner filed another motion for relief from judgment in the trial court.  He alleged that:  (1) the prosecution's case was based on the knowing and intentional use of perjury;  (2) the prosecution suppressed testimonial evidence favorable to the accused; (3) he was denied a full and fair opportunity to litigate his constitutional claims due to a breakdown in the State's corrective process; and (4) due to corrupt representation, the prosecution's case was not subjected to significant adversarial testimony.  *See* Mot. for Relief from J. (ECF No. 21-15, PageID.1802).

Elsewhere in his post-conviction motion, Petitioner summarized his claims as: (1) false swearing/perjury/criminal conduct by an officer; (2) dereliction of duty by a state magistrate; (3) malfeasance/misfeasance of office, obstruction of justice, etc., by the prosecutor and contradictory testimony by an officer in subsequent proceedings; (4) additional perjury, extraneous evidence, denial of the confrontation

clause, and denial of a full and fair opportunity to litigate constitutional rights; (5) constitutional right violations, malfeasance/misfeasance, prejudicial discriminatory actions, proliferated charges by a state judge; and (6) ineffective assistance of counsel with regard to (a) evidentiary proceedings, (b) subjecting the prosecution's case to meaningful adversarial testimony, (c) altered evidence, perjury, erroneous jury instructions, and the requisite knowledge element, (d) double jeopardy and *ex post facto* principles, stipulation, and the sentencing guidelines, and (e) the constructive denial of appellate counsel. *See id*. at PageID.1803.

The trial court denied Petitioner's motion in part because Petitioner failed to show "actual prejudice" under Michigan Court Rule 6.508(D)(3) for failing to raise his claim about trial counsel during the direct appeal. *See People v. Roberts*, Order at pp. 7-8 (Muskegon Cty. Cir. Ct. June 7, 2016); ECF No. 21-16, PageID.1989-1990. Petitioner appealed the trial court's decision to the Michigan Court of Appeals, which denied leave to appeal for failure to establish that the trial court erred in denying his motion for relief from judgment. *See People v. Roberts*, No. 336066 (Mich. Ct. App. Apr. 25, 2017). Petitioner then applied to the Michigan Supreme Court, which denied leave to appeal on May 1, 2018, because Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Roberts*, 501 Mich. 1059; 910 N.W.2d 249 (2018).

9

## G.  The Amended Petition

On July 30, 2018, Petitioner returned to federal court and filed an amended habeas corpus petition through counsel, *see* ECF Nos. 16-1 through 16-3, and a motion to re-open this case, *see* ECF Nos. 15 and 16.  On September 19, 2018, the Court granted Petitioner's motion to re-open his case and ordered the Clerk of Court to serve the amended petition on the State.  *See* Order, ECF No. 18.  The State subsequently filed an answer in opposition to the amended petition, *see* ECF No. 20, and on May 2, 2019, Petitioner filed a reply to the State's answer, *see* ECF No. 22.

On May 6, 2021, Petitioner was discharged from his state sentence.[1] His petition is not moot, however, because he commenced this action while he was still incarcerated, and a petition filed under those circumstances satisfies the "in custody" requirement of 28 U.S.C. § 2254(a).  *See Akrawi v. Booker*, 572 F.3d 252, 255 n.1 (6th Cir. 2009) (citing *Abela v. Martin,* 380 F.3d 915, 921 (6th Cir. 2004)).  In addition, because Petitioner presumably faces collateral consequences from his convictions, there exists a live and viable challenge to his felony convictions.  *See Gentry v. Deuth*, 456 F.3d 687, 693-95 (6th Cir. 2006); *Green v. Arn*, 839 F.2d 300, 301–02 (6th Cir. 1988); *Bentley v. Bock*, 239 F. Supp. 2d 686, 689 (E.D. Mich. 2002).

---

[1] *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=640528.

## II.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' "  *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).  The Supreme Court has explained that

> a state court decision is "contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000)) (alterations added).

> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.,* at 413, 120 S.Ct. 1495.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  *Id.,* at 410, 412, 120 S.Ct. 1495.  The state court's application of clearly established law must be objectively unreasonable.  *Id.,* at 409, 120 S.Ct. 1495.

<u>Id</u>. at 75.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt[.]' " *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal and end citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). If no state court adjudicated the petitioner's claim on the merits, AEDPA's deferential standard of review does not apply, and the Court reviews the claim *de novo*. *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.  Discussion

### A.  Criminal Intent

Petitioner alleges that his conduct during the incident in question was not a crime because he lacked the intent to commit a crime or to produce child sexually abusive material when he recorded the sexual activity between the complainant and himself. Further, according to Petitioner, Mich. Comp. Laws § 750.145c is not a strict liability statute, and in the absence of criminal intent, his conviction violates due process. *See* Memorandum in Support of Amended Habeas Pet. (ECF No. 16-2, PageID.160-169); *see also* Petitioner's Response to Respondent's Opp'n to Pet. for Habeas Corpus (ECF No. 22, PageID.2620-2622, 2624-2632).

**1.  Procedural Default**

The State argues that Petitioner procedurally defaulted his claim because he failed to raise the claim on direct appeal and because the state trial court relied on that omission to deny relief under Michigan Court Rule 6.508(D)(3).[1]  This argument derives from the Supreme Court's holding in *Coleman v. Thompson*, 501 U.S. 722 (1991), that, when "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

---

[1] Michigan Court 6.508(D)(3) reads in relevant part as follows:

> **(D)  Entitlement to Relief.**   The defendant has the burden of establishing entitlement to the relief requested.  The court may not grant relief to the defendant if the motion
> . . . .
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
>> (a)  good cause for failure to raise such grounds on appeal or in the prior motion, and
>>
>> (b)  actual prejudice from the alleged irregularities that support the claim for relief.

Mich. Ct. R. 6.508(D)(3).

that failure to consider the claims will result in a fundamental miscarriage of justice." *Id*. at 750.

Petitioner maintains that there was no procedural default because the state courts did not base their decision on a failure to follow a state procedural rule and did not enforce any state procedural rule against him. *See* Petitioner's Response to Respondent's Opp'n to Pet. for Habeas Corpus (ECF No. 22, PageID.2623). The Court agrees with Petitioner.

Petitioner first raised the issue of his alleged lack of criminal intent in his 2014 motion for relief from judgment. Although he could have raised the claim during the direct appeal, the trial court did not deny the motion for that reason. Instead, the court returned the motion to Petitioner without considering the merits of his claim. *See* Op. and Order, No. 08-57305-FH (Muskegon Cty. Cir. Ct. Apr. 16, 2014). And neither the Michigan Court of Appeals in case number 322732, nor the Michigan Supreme Court at 498 Mich. 883; 869 N.W.2d 564, clearly and expressly relied on a state procedural error when they denied leave to appeal the trial court's decision.

Petitioner raised related claims in his 2016 motion for relief from judgment and in his appeal from the trial court's decision on his motion. But the focus of those claims was the lack of a jury instruction on criminal intent, trial counsel's failure to seek a jury instruction on criminal intent, and appellate counsel's failure to challenge the jury instructions on appeal. *See* Mot. for Relief from J. (ECF No. 21-15,

14

PageID.1855-1856, 1860-61); *see also* Appellant's Application for Leave to Appeal in Michigan Court of Appeals number 336066 (ECF No. 21-23, PageID.2536-38). There was no independent claim that Petitioner's conduct was not a crime under the relevant statute due to the alleged lack of criminal intent.

Even if Petitioner's claim is procedurally defaulted, a procedural default in the habeas context is not a jurisdictional matter. *Trest v. Cain,* 522 U.S. 87, 89 (1997)*.* A federal court may bypass a procedural-default issue in the interest of judicial economy when the petitioner's claim can be resolved against him on the merits and the procedural-default issue involves complicated issues of state law. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). Accordingly, the Court proceeds to the merits of Petitioner's claim. The Court's review is *de novo* because no state court adjudicated the claim on the merits.

### 2. The Merits

#### a. Legal Framework

Petitioner maintains that his conduct during the incident with the complainant was not a crime under Mich. Comp. Laws § 750.145c because he lacked the intent to commit a crime. This claim lacks merit because, whether criminal intent is a necessary element of § 750.145c(2) and, if so, what is needed to establish intent

under the statute are questions of state law. *See Bates v. McCaughtry*, 934 F.2d 99, 103 (7th Cir. 1991) ("What is essential to establish an element, like the question whether a given element is necessary, is a question of state law.") (quoted with approval in *Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002)).

Petitioner, nevertheless, maintains that his conviction violates due process because his conduct was not within the ambit of the statute, as he had no criminal intent when he created the images. *See* Memorandum in Support of Amended Habeas Pet. (ECF No. 16-2, PageID.161); Petitioner's Response to Respondent's Opp'n to Pet. for Habeas Corpus (ECF No. 22, PageID.2622). Although Petitioner also contends that his argument is not about the sufficiency of the evidence, he then states that the issue is whether the evidence established that he had criminal intent. *See* Petitioner's Response to Respondent's Opp'n to Pet. for Habeas Corpus (ECF No. 22, PageID.2625). He implies that the prosecutor failed to prove an essential element of the offense, namely, criminal intent. *See id.* at PageID.2630 (arguing that the cases on which he relies support his argument that criminal intent is required); *id.* at 2637 ("It is the Petitioner's position that while the evidence might have been strong as to other issues, the prosecution did not establish criminal intent.")

To the extent that Petitioner has raised a constitutional issue, his claim is a challenge to the sufficiency of the evidence. The question on review of a challenge to the sufficiency of the evidence "is whether, after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  The Court has concluded for the reasons given below that the evidence was sufficient to convict Petitioner as charged, even assuming that a showing of criminal intent was required.

### b.  The Statute

The statute in question, Mich. Comp. Laws § 750.145c(2), "proscribes child sexually abusive activity and child sexually abusive material[.]"  *People v. Willis*, 504 Mich. 905; 931 N.W.2d 1, 1, *reconsideration denied*, 504 Mich. 964; 932 N.W.2d 779 (2019).  It "is primarily concerned with punishing those who are involved in the creation or origination of child sexually abusive material . . . ." *People v. Hill*, 486 Mich. 658, 674; 786 N.W.2d 601, 610 (2010).

At the time of Petitioner's trial in 2009, the statute read as follows:

A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony . . . if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

Mich. Comp. Laws § 750.145c(2) (as amended in 2004 PA 478). As explained in

*People v. Adkins*, 272 Mich. App. 37; 724 N.W.2d 710 (2006),

> the language of § 145c(2) clearly and unambiguously imposes criminal liability on three distinct groups of "person[s]," provided that at the time of their actions, the persons met the requisite knowledge element. Section 145c(2) delineates the member of its first described category as "[a] person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material."

*Id.,* 272 Mich. App. at 40–41; 724 N.W.2d at 713 (internal and end footnotes and emphasis omitted).

A person fits in the second group of people subject to criminal liability under the statute if the person "arranges for, produces, makes, or finances . . . any child sexually abusive activity or child sexually abusive material." *Id*., 272 Mich. App. at 41; 724 N.W.2d at 713. "Into the third group the statute places 'a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material.' " *Id*., 272 Mich. App. at 42; 724 N.W.2d at 713.

The prosecutor seemed to think that Petitioner fit in the second category because Petitioner produced, made, or created child sexually abusive material or arranged for child sexually abusive material or child sexually abusive activity. *See* 7/17/09 Trial Tr. at pp. 17, 45 (ECF No. 21-10, PageID1345, 1373). There was overwhelming evidence to support the prosecutor's theory.

18

The complainant testified that she was seventeen years old at the time of her encounter with Petitioner, that Petitioner knew her age at the time, and that Petitioner took photos of her while she was nude or partially nude. *See* 7/16/2009 Trial Tr., Vol. II, at pp. 164, 166-167, 176 (ECF No. 21-9, PageID.1198, 1200-1201, 1210). Petitioner also engaged in sexual activity with her and then took more photos of her while she was nude. *See id*. at PageID.1211- 1221.

Later that same day, Petitioner admitted to two police officers that he knew the complainant was seventeen years old. He then showed the officers the video that he took of his sexual activity with the complainant. *See id*. at PageID.1251-1253. Petitioner also showed the officers the still photos that he took of the complainant on a camera while the complainant was nude or partially nude. *See id*. at PageID.1257-1259.

### c. Intent

Despite these facts, Petitioner asserts that he did not intend to commit a crime. In Michigan,

> "[c]riminal intent is ordinarily an element of a crime," even where "the Legislature did not expressly state that a defendant must have a criminal intent to commit [the] crime," *People v. Jensen,* 231 Mich. App. 439, 586 N.W.2d 748, 753 (1998) (citing *People v. Rice,* 161 Mich. 657, 126 N.W. 981 (1910)), and because "[s]tatutes creating strict liability regarding all their elements are not favored," *People v. Quinn,* 440 Mich. 178, 487 N.W.2d 194, 199 (1992).

*United States v. Mosley*, 635 F.3d 859, 863 (6th Cir. 2011).  But even assuming that criminal intent was necessary to convict Petitioner of violating Mich. Comp. Laws § 750.145c(2), the record indicates that Petitioner possessed the intent to create child sexually abusive material and intended to engage in child sexually abusive activity.

Petitioner asserts that he "arguably intended other things, e.g., an intent to protect himself against any rape or related allegations made by a consenting but untrustworthy female."  Memorandum in Support of Amended Habeas Pet. at p. 22 n. 10 (ECF No. 16-2, PageID.172).  Elsewhere, Petitioner states that he was photographing the complainant to help her reach her goal of earning money in the adult film industry, *see* Petitioner's Response to Respondent's Opp'n to Pet. for Habeas Corpus (ECF No. 22, PageID.2628) and that he showed pictures of the incident to the police to demonstrate that the complainant had consented to the sexual activity and that he was innocent of the rape charge, *id*. at PageID.2621.

The complainant, however, testified that Petitioner forced his penis in her mouth and that the two of them had not previously discussed the filming of any sex acts.  *See* 7/16/09 Trial Tr., Vol. II, at pp. 177-178 (ECF No. 21-9, PageID.1211-1212).  She also testified that, after the sex acts, she asked Petitioner if she could get dressed, but he declined her request and said that they were going to take a few more pictures.  *See id*. at PageID.1215.

There was additional evidence that Petitioner knew the complainant's age at the time. *See id.* at PageID.1200-1201, 1253, 1264, 1319. And he apparently had some familiarity with the law on child sexually abusive activity because he informed the complainant and the police that he could not distribute any sexually explicit videos or photographs of the complainant until she was eighteen years of age. *See id.* at PageID.1228, 1259. He described the filming to the police officers as an audition tape and accumulation of data because he knew that he could not submit the pictures for publication. *See id.* at PageID.1259.

Additionally, Petitioner informed the complainant and her parents that no one could go with him and the complainant during the photo shoot, *see id.* at PageID.1244, and he took the complainant to his home for the photo shoot, instead of the gym and the beach, as they previously agreed to do. *See id.* at PageID.1232-1233, 1243. He failed to disclose to the complainant that he was filming their sexual activity, *see id.* at PageID.1212-1215, 1236, 1245, and he instructed the complainant not to tell her parents what had happened because what they had done was just between the two of them. *See id.* at PageID.1216.

The jury could have inferred from the evidence that Petitioner intended to produce or create child sexually abusive material and arrange for child sexually abusive activity. The jury could have concluded from the evidence taken in the light

most favorable to the prosecution that Petitioner possessed criminal intent and that the prosecution proved its case beyond a reasonable doubt.

Even if Petitioner did not know that his conduct violated the law, he may be held accountable for the conduct because "[t]he familiar maxim 'ignorance of the law is no excuse' typically holds true." *Elonis v. United States*, 575 U.S. 723, 734–35 (2015). The jury was entitled to infer from the evidence that Petitioner knew the facts that made his conduct fit the definition of the offense, even if he did not know that those facts gave rise to a crime. *See id*. at 735. His claim, therefore, lacks merit.

## B. Trial and Appellate Counsel

Petitioner's second claim alleges that his former attorney, who represented him at trial and on appeal, was constitutionally ineffective for not raising his first claim in the trial court and on appeal. He contends that, at the time, there was state and federal case law supporting his argument that his conduct was not a crime and there was no strategic or tactical reason not to make the argument. He argues that counsel's failure to assert his claim at trial and on appeal prejudiced him because he had a valid defense and could have prevailed on his argument regarding the lack of criminal intent. *See* Memorandum in Support of Am. Habeas Pet. (ECF No. 16-2, PageID.169-174).

The State contends that this claim, like Petitioner's first claim, is procedurally defaulted because Petitioner did not raise the claim on direct appeal. For the reasons

given in the Court's previous discussion on procedural default, the Court finds that Petitioner's claim is not procedurally defaulted.  The Court proceeds to the merits of Petitioner's claim.

### 1. *Strickland*

To prevail on his claim about trial counsel, Petitioner "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

An attorney's deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland,* 466 U.S. at 693).

The *Strickland* standard is also the proper standard for evaluating a petitioner's claim about appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  An appellate attorney is not required to raise every non-frivolous claim requested by his or her client if the attorney decides, as a matter of professional judgment, not to raise the claim. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Instead,

an appellate attorney is constitutionally ineffective if (1) the attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability that the petitioner would have prevailed on appeal if his attorney had raised the issues. *Robbins,* 528 U.S. at 285 (citing *Strickland*, 466 U.S. at 687-91, 694).

### 2. Application of *Strickland*

Petitioner's underlying claim about his alleged lack of criminal intent is meritless. *See supra*, Section III.A.2. Therefore, former counsel's failure to raise the defense at trial and on appeal did not amount to deficient performance. Counsel cannot be ineffective for failing to raise a meritless issue. *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Further, given the evidence in the case, there is not a reasonable probability that the result of the trial or the appeal would have been different if counsel had argued that Petitioner lacked criminal intent and was innocent of the charge. Thus, Petitioner was not prejudiced by his former attorney's performance. He has failed to establish constitutionally ineffective assistance of trial and appellate counsel.

### C. Vagueness

Petitioner's third and final claim alleges that Mich. Comp. Laws § 750.145c is impermissibly vague as applied to the facts in his case. Petitioner asserts that he did not understand he was breaking the law, he did not have fair notice that his

conduct would constitute a crime, and the lack of fair notice violated his constitutional right to due process. *See* Memorandum in Support of Amended Habeas Pet. (ECF No. 16-2, PageID.174-177). In his reply brief, Petitioner contends that he was not put on notice that (1) defending himself against a rape charge by showing the video and photos of the complainant to the police would expose him to serious criminal liability, and (2) the precautions he took, such as getting the parents' consent to pursue a legal objective, would be insufficient to insulate himself from criminal liability. *See* Petitioner's Response to Respondent's Opp'n to Pet. for Habeas Corpus (ECF No. 22, PageID.2640).

The Michigan Court of Appeals adjudicated Petitioner's claim on direct appeal and rejected the claim for lack of merit. The Court of Appeals stated that the statute "clearly provides 'a person of ordinary intelligence a reasonable opportunity to know what is prohibited' and what circumstances must exist in order for the affirmative defense of emancipation by operation of law to be applicable." *Roberts*, 292 Mich. App. at 500; 808 N.W.2d at 297 (quoting *People v. Sands,* 261 Mich. App. 158, 161; 680 N.W.2d 500 (2004)).

### 1. Clearly Established Federal Law

The Supreme Court explained not long ago that " '[t]he prohibition of vagueness in criminal statutes' . . . is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law.' " *Sessions v. Dimaya*,

138 S. Ct. 1204, 1212 (2018) (quoting *Johnson v. United States,* 576 U.S. 591, 595 (2015)). "The void-for-vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Id.* (citing *Papachristou v. Jacksonville,* 405 U.S. 156, 162 (1972)). For laws that define criminal offenses, the doctrine " 'requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *Beckles v. United States*, 137 S. Ct. 886, 892 (2017) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

## 2. Application of the Law

At the time of Petitioner's interactions with the complainant, the relevant portion of the statute in question read as follows:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony . . . if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

Mich. Comp. Laws § 750.145c(2) (as amended in 2004 PA 478).

The first subsection of the statute explained the key terms used elsewhere in the statute. The term "child" was defined as "a person who is less than 18 years of age, subject to the affirmative defense in [Mich. Comp. Laws § 750.145c(6)] regarding persons emancipated by operation of law." Mich. Comp. Laws § 750.145c(1)(b). "Child sexually abusive activity" meant "a child engaging in a listed sexual act," Mich. Comp. Laws § 750.145c(1)(l), and "a listed sexual act" included, among other things, sexual intercourse and erotic nudity. Mich. Comp. Laws § 750.145c(1)(h).

"Sexual intercourse" included both genital-genital and oral-genital intercourse. Mich. Comp. Laws § 750.145c(1)(p). Finally, "child sexually abusive material" meant, among other things, "any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image . . . or picture . . . which is of a child or appears to include a child engaging in a listed sexual act . . . ." Mich. Comp. Laws § 750.145c(1)(m).

A person of ordinary intelligence could understand Mich. Comp. Laws § 750.145c(2) to mean that photographing and filming someone engaged in erotic poses and vaginal and oral sex was prohibited if the person was under the age of eighteen. Therefore, the statute was not vague. The statute provided fair notice that what Petitioner was accused of doing was prohibited even if the complainant was

almost eighteen years old and even if Petitioner believed that the sex acts were consensual. Any misunderstanding by Petitioner that his conduct was permissible so long as he did not distribute the images which he created and had written consent from the complainant and her parents did not excuse his conduct. See *Elonis*, 575 U.S. at 734–35.

The state court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, Supreme Court decisions on statutory vagueness. Petitioner, therefore, has no right to relief on his claim.

## IV. Conclusion

Petitioner's first two claims lack merit, and the state court's rejection of his third claim was objectively reasonable. The Court, therefore, denies the amended habeas corpus petition.

The Court also declines to grant a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In addition, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the claims deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Dated: September 21, 2021                   s/Sean F. Cox
                                            Sean F. Cox
                                            U. S. District Judge